IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDDIE FALLON,

      Petitioner,

vs.                                                                                        No. CIV 99-923 JC/LFG

LAWRENCE TAFOYA,

      Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed August 16, 1999. Petitioner, Eddie Fallon ("Fallon"), currently incarcerated in the southern New Mexico Correctional Facility in Las Cruces, challenges the judgment and sentence entered by the Ninth Judicial District Court in <u>State v. Fallon</u>, No. CR-94-11895 (County of Curry, New Mexico).

2. Fallon was convicted by a jury on three counts of criminal sexual penetration of a minor, and two counts of criminal sexual contact of a minor, arising from incidents involving his six-year-old daughter. He was sentenced to 30 years' incarceration. The New Mexico Court of Appeals affirmed the conviction, and the state supreme court denied certiorari. Fallon's state habeas petition was

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

unsuccessful in the district court, and again the state supreme court denied certiorari.

3. As grounds for federal habeas relief, Fallon contends that his trial attorney rendered ineffective assistance in that he failed to investigate leads indicating there may have been a perpetrator other than Fallon, and he failed to object to hearsay, inadmissible expert witness testimony, and other irrelevant and prejudicial evidence at trial.

4. Respondent concedes, and the Court finds, that Fallon has exhausted his remedies in state court. Respondent argues that federal habeas relief is not available to Fallon, because all of the claims raised in his petition have been adjudicated on the merits by the courts of New Mexico, and those adjudications are entitled to deference by this Court under 28 U.S.C § 2254(d).

5. Fallon had a new attorney on appeal. All of the issues he now raises regarding ineffective assistance of his trial counsel were raised in state court, either on direct appeal or in habeas proceedings. The Court agrees with Respondent that Fallon's claims have been fully adjudicated in state court and that the decisions rendered there are not contrary to established federal law and do not represent an unreasonable determination of the facts.

## Deference to State Adjudications

6. A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999). "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." Thompson v. Oklahoma, 202 F.3d

2

283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan. 10, 2000), *petition for cert. filed* Apr. 10, 2000.

7. Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), which "increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations." Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997). The Supreme Court recently interpreted the revised standards of review set forth in AEDPA and held, among other things, that under § 2254(d)(1), "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, – U.S. – , 120 S. Ct. 1495, 1522 (Apr. 18, 2000).

> The Supreme Court of the United States sets the bounds of what is 'reasonable'; a state decision within those limits must be respected – not because it is right, or because federal courts must abandon their independent decisionmaking, but because the grave remedy of upsetting a judgment entered by another judicial system after full litigation is reserved for grave occasions. That is the principal change effected by § 2254(d)(1).

Lindh v. Murphy, 96 F.3d 856, 871 (7th Cir. 1996), *rev'd on other grounds,* 521 U.S. 320, 117 S. Ct. 2059 (1997).

### Standards for Determining Ineffective Assistance of Counsel

8. To establish ineffective assistance of counsel, Fallon must make a two-prong showing; (1) that counsel's performance was constitutionally defective, and (2) that the deficient performance prejudiced the defense in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Rogers v. United States, 91 F.3d 1388, 1391-92 (10th Cir. 1996).

9. To prove deficient performance, Fallon must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Hickman v. Spears, 160 F.3d 1269, 1273 (10th Cir. 1998). Thus, scrutiny of counsel's performance must be "highly deferential" and avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995). To be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997). The Court examines Fallon's claims with these principles in mind.

**Failure to Object to Hearsay**

10. In Ground Two of his federal petition, Fallon alleges that his attorney failed to object to numerous hearsay statements made by four witnesses at trial, Rosa Briseno, Berta Loera, Officer Gary Gulley, and Dr. James MacQueen, to the effect that the child victim told them her father had sexually touched or penetrated her. This same argument was raised on direct appeal and rejected by the New Mexico courts.

11. Briseno's statements. The court of appeals held that the testimony of Briseno, the child's teacher, regarding the child's statements of sexual abuse, was admissible to establish that the statements were made and to explain why the teacher reported the statements to the principal. The court found that failure to object to this testimony did not, therefore, constitute ineffective assistance. (Ex. E. to Answer, at 4-5) (hereafter referred to as "Ex. E").

12. Loera's statements. The court further held that it was not ineffective assistance for Fallon's counsel to forgo objection to statements by Loera, the school counselor, to the effect the child said her father had been touching her "private part," and that he was angry with her for telling

4

about it. The court noted that the prosecutor twice interrupted the witness when she veered into hearsay, and any objection at that point by defense counsel would have drawn unnecessary attention to the testimony. The court also held that any error in admitting the evidence was harmless in light of the strong evidence of guilt and the fact that Loera's statements were cumulative of the child's own testimony. Finally, the court found that the testimony was not necessarily objectionable, as it was presented not for the truth of the matter asserted but rather to show that the child made consistent statements at different times. (Ex. E, at 5-6).

    13. <u>Gulley's statements</u>. Police Officer Gulley drove the child to various locations in town to have her point out the places where, she said in an earlier interview, she was sexually abused. Gulley testified at trial that the child pointed out locations where "it happened," and that the child stated that "it happened at the office, at the trailer, and at the girlfriend's house." The court held that Fallon was not prejudiced by defense counsel's failure to object to Gulley's testimony as hearsay, because the testimony was used to identify the buildings pictured in exhibits offered by the State, because Gulley did not identify the perpetrator, and because the testimony was cumulative of the victim's testimony at trial as to locations where the abuse occurred. (Ex. E, at 6-7).

    14. <u>MacQueen's statements</u>. Dr. MacQueen examined the victim and testified that his knowledge of the child's history came from the nurse who interviewed her, from the victim's mother, and from the victim herself. He stated that his understanding of the child's history was that the child had been sexually penetrated by her father four days earlier. The court noted that the evidence indicating that Fallon was the perpetrator came from the medical record, not necessarily from statements made by the victim's mother to the doctor. The court found that MacQueen's testimony, even if it were to be considered hearsay, fell under the hearsay exception for statements made for

purposes of medical diagnosis or treatment. (Ex. E, at 7-8).

15. The Court finds reasonable the state court's holdings regarding admissibility of the statements, in spite of the hearsay ban. Counsel could reasonably have decided that repeated objections to testimony regarding the victim's statements to adults who were helping and treating her would only serve to emphasize the testimony for the jury. In addition, even if the testimony had been admitted over counsel's objection, it would not be grounds for reversal since the victim herself was present and gave testimony at trial, with full opportunity for cross-examination by defendant's counsel. United States v. Whalon, 526 F.2d 1117, 1119 (10th Cir. 1975); United States v. Wolf, 839 F.2d 1387, 1395-96 (10th Cir. 1988) ("there is no reversible error where the declarant testifies in court and is subject to cross-examination").

> Hearsay evidence is ordinarily inadmissible 'because the absence of an opportunity to cross examine the source of the hearsay information renders it unreliable' . . . But where the declarant testifies at trial and is subject to cross-examination concerning the statement, the dangers of unreliability disappear.

United States v. Gary, 999 F.2d 474, 479 (10th Cir. 1993). *See also*, Miller v. Marr, 89 F.3d 850 (Table, text in Westlaw), No. 96-1009, 1996 WL 364593 (10th Cir. June 28, 1996) (habeas relief denied following conviction of defendant for sexual abuse of his daughter; counsel not ineffective in failing to object to admission of hearsay evidence without an accompanying cautionary instruction).

16. The Court cannot say that the performance of Fallon's trial counsel was "completely unreasonable" and bore "no relationship to a possible defense strategy," nor that there is a reasonable probability that, if counsel had made hearsay objections to the above testimony, the outcome of the trial would have been different. The findings of the New Mexico Court of Appeals on these identical claims are neither contrary to established federal law nor do they represent unreasonable

determinations of the facts in light of the evidence presented.

**Failure to Object to Expert Witness Testimony**

17. Also in Ground Two of his federal petition, Fallon asserts that his trial counsel failed to object to admission of improper expert witness testimony by Carmen Smith, a social worker, and Berta Loera, the school counselor. He argues that the witnesses improperly testified that the information they were given indicated that the child had been sexually abused. He further contends that the witnesses should not have been allowed to testify that the victim's fetal-position posture was significant in diagnosing sexual abuse and post-traumatic stress disorder, because they were not qualified as experts and because they relied solely on a textbook in making the fetal-position statements. In his direct appeal, Fallon raised identical points with regard to the expert qualifications and testimony of Loera and Smith.

18. In rejecting Fallon's argument, the court of appeals noted that Fallon's attorney did indeed object to Loera's expert qualifications but his objections were validly overruled, and the trial court properly qualified Loera as an expert witness based on her education, school licensure, experience counseling children, and specialized training in handling cases of sexual abuse of children. The court also noted that, contrary to Fallon's allegation, Loera did not state her conclusion that the child had been sexually abused; rather, she testified appropriately that the information she received about the child was consistent with a child who had been sexually abused. (Ex. E, at 8-10). The court of appeals also held that Smith gave sufficient testimony to show that she was qualified as an expert in dealing with sexually abused children, and it was proper for her to testify that the child's behavior was consistent with sexual abuse. (Ex. E, at 10-11).

19. Fallon argues that the testimony regarding the fetal position was irrelevant and

7

prejudicial, and that defense counsel was deficient in not objecting to it. Loera testified that, at her first interview with the victim after she had been referred by her teacher, the child "had her whole body almost in a fetal position." When the prosecutor asked her to explain the significance of this posture, defense counsel objected to Loera's qualifications as an expert. Further testimony established Loera's qualifications, and she went on state that the fetal position indicated that the child was regressing, and this posture was consistent with a child who has been sexually abused. Smith testified that the victim's fetal-position posture was significant in that it indicated withdrawing, one of the signs of anxiety disorder and post traumatic stress disorder, which was consistent with sexual abuse.

20. The New Mexico Court of Appeals rejected these arguments, holding that both witnesses had given sufficient testimony to show that they were qualified as experts in dealing with sexually abused children; that their testimony concerning the significance of the fetal position was based on their training, education, and experience, rather than solely on the basis of the DSM IV; and that the testimony would "appreciably assist the jury in making its decision." (Ex. E, at 8-11, 12). The court of appeals held that the testimony was relevant and proper, and any failure by Fallon's attorney to object to the testimony was not ineffective, since an objection would not have changed the outcome. The court noted, moreover, that Fallon's attorney did object to the Loera testimony, but he lost that battle.

21. Fallon has no grounds to complain that his attorney made no effort with regard to the witness whose qualifications he challenged. In any case, the state court of appeals did not act unreasonably or contrary to law in determining that the trial court had a sufficient basis for qualifying these two witnesses as experts and in admitting their testimony with regard to the significance of the

fetal-position posture of the victim, and that the performance of defense counsel with regard to the experts did not fall below the standard of a reasonably competent attorney. There is no constitutional basis for this Court to interfere with the state court's ruling.

### Failure to Object to Other Allegedly Inadmissible Testimony

22. Fallon also faults his trial counsel for failing to object to the testimony of Darlene Betancourt, his former girlfriend, who stated that on a weekend night when Fallon and his daughter were spending the night at her home, she awoke to hear the child screaming. Fallon argues that this testimony implied that he was abusing the child on that occasion.

23. The court of appeals held that this evidence may have been irrelevant but it was not prejudicial. The court noted that Betancourt made no accusations of abuse, instead testifying that the child was fully clothed when she saw her, and that Fallon told her the child had been having a nightmare. (Ex. E, at 11-12). This conclusion is a reasonable application of law to facts.

24. Fallon also asserts that his attorney was ineffective in failing to object to testimony by the child's mother to the effect that, five years earlier, the child was afraid to go on visitation with Fallon. This claim, too, was made on direct appeal. The court also rejected this argument for the reasons given in connection with the Betancourt testimony: the evidence may have been irrelevant, but it was not prejudicial as it did not contain allegations of abuse. (Ex. E, at 12). This conclusion, too, is reasonable and not contrary to federal law.

25. In summary, the Court of Appeals noted with regard to allegations of ineffective assistance based on failure to raise objections:

> Given the facts that the Child was scheduled to testify at trial and that there was extensive corroborating evidence from other witnesses, it appears that defense counsel was in a difficult position in attempting

9

> to defend the case. Objections to the possibly inadmissible portions of testimony, especially where they were cumulative, may have served only to draw unwanted attention to that witness's testimony. Testimony that might have been excluded if an objection had been made was merely cumulative and added nothing prejudicial to the case. Therefore, Defendant's claim of ineffective assistance of counsel must fail.

(Ex. E to Answer, at 13-14).

26. These issues were again thoroughly briefed for the benefit of the New Mexico Supreme Court in Fallon's petition for certiorari, which was denied. There is nothing in the state court of appeals' conclusions regarding failure to object which is unreasonable or contrary to federal law. This Court will defer to those rulings.

### Failure to Investigate and Present Exculpatory Evidence

27. In Ground One of his federal habeas petition, Fallon asserts that his attorney was ineffective in failing to interview witnesses favorable to the defense and in failing to investigate information which indicated there may have been another perpetrator.

28. Fallon did not raise these claims on direct appeal; however, he raised them in state habeas proceedings, alleging that his trial counsel failed to investigate leads that a perpetrator other than Fallon could have been to blame for the sexual abuse committed on Fallon's daughter. (Ex. H to Answer). These leads allegedly include Fallon's requests, prior to trial, that his attorney speak to several witnesses who could testify that the victim had accused at least one other person of molesting her. He also argued that his attorney was ineffective in failing to discover a videotape of the child at a "safe house" stating that someone other than her father sexually abused her.

29. The State argued in response to the habeas petition that a reasonable defense attorney could have decided it would be futile to pursue a strategy involving the victim's prior accusations of

10

rape, since such evidence might well be inadmissible and could backfire on the defendant if the prior statements were denied on the stand. New Mexico Rules of Evidence, Rule 11-608(B); State v. Scott, 113 N.M. 525, 828 P.2d 958 (Ct. App. 1991), *denial of habeas corpus aff'd by* Scott v. Dorsey, 134 F.3d 383 (Table, text in Westlaw), No. 96-2030, 1998 WL 43157 (10th Cir. Jan. 27, 1998), *cert. denied*, 525 U.S. 831, 119 S. Ct. 83 (1998). In addition, the State pointed out the conjectural nature of the allegations that the victim may have accused another person of sexually molesting her. (Ex. I to Answer).

30. The state district judge dismissed Fallon's habeas petition, noting that Fallon did not name the witnesses who would allegedly have testified that there was another perpetrator, and he did not give any clue as to what their testimony would have been. The state court also pointed out that Fallon did not claim that any of these witnesses had exculpatory evidence to present; rather, Fallon said he would have used the evidence to cross-examine the victim. The court concluded, "This Court is not persuaded that Defendant's arguments that there may have been another perpetrator molesting the victim creates a reasonable probability that if this information were presented to the jury, the result of the proceeding would have been different." (Ex. J to Answer, at 2).

31. An attorney representing a defendant in a criminal case has a duty to make reasonable investigations, or to make a reasonable decision that renders particular investigations unnecessary. Strickland, at 691; Nguyen v. Reynolds, 131 F.3d 1340 (10th Cir. 1997), *cert. denied*, 525 U.S. 852, 119 S. Ct. 128 (1998). However, the decision whether to call a witness generally rests within the sound discretion of trial counsel, Jackson v. Shanks, 143 F.3d 1313, 1319 (10th Cir.), *cert. denied*, 525 U.S. 950, 119 S. Ct. 378 (1998), and such decisions involving trial tactics are "virtually unchallengeable." Strickland, at 690. It is the petitioner's burden to "affirmatively prove prejudice,"

11

that is, to show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id., at 693.

32. It is not clear whether Fallon is asserting that the child made false accusations against another perpetrator, which could have been used to impeach her credibility with regard to the allegations against him, or whether he claims that his daughter pointed to someone else entirely, thus exonerating him. Fallon has the burden of showing how the omitted evidence, to a reasonable probability, would have changed the outcome of the trial. His vague allegation that there might have been another perpetrator and that his attorney failed to properly investigate that possibility does not meet that burden. "In order to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim." Hatch v. Oklahoma, 58 F.3d 1447, 1469 (10th Cir. 1995).

> These allegations must be more than mere conclusory allegations unsupported by specifics . . . For claims of ineffective assistance of counsel under Strickland, the allegations must necessarily show how Hutchinson was prejudiced and that there is a reasonable probability he would have prevailed had counsel done what he now claims should have been done. We conclude that Mr. Hutchinson failed to allege the prejudice necessary under Strickland in other than conclusory, nonspecific fashion and that his ineffectiveness claims must therefore be denied.

United States v. Hutchinson, 991 F.2d 806 (Table, text in Westlaw), No. 92-1268, 1993 WL 128880, at *3 (10th Cir. Apr. 21, 1993).

33. Fallon does not state who the witnesses are that his attorney failed to interview, what they would have said on the stand, nor how that testimony might have affected the verdict. He does not give any clue as to who the other perpetrator might have been or what opportunity this other person might have had to sexually abuse Fallon's daughter. He does not point out how evidence of the

child's prior false accusations, if there were any, would probably have changed the outcome of the trial, nor does he establish that this evidence would probably have been admitted, in light of New Mexico law on the subject.

34. The state habeas judge was the same judge who handled the trial. He was able to observe the child's demeanor and testimony and to evaluate all of the evidence for and against Fallon's position. He found no reasonable probability that information regarding the possible existence of another perpetrator, or the possible existence of false charges against another perpetrator, would have changed the outcome. This Court cannot say that finding was unreasonable or contrary to law.

## Recommended Disposition

That the petition be denied and the case be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge